In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

Nos. 16-1294 and 16-1739

LEND LEASE (US) CONSTRUCTION INC.,

*Plaintiff-Appellant*,

*v.*

ADMINISTRATIVE EMPLOYER SERVICES, INC. and TECHNOLOGY
INSURANCE COMPANY, INC.,

*Defendants-Appellees*.

———————————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-04318 — **Samuel Der-Yeghiayan**, *Judge*.

———————————

ARGUED SEPTEMBER 16, 2016 — DECIDED OCTOBER 20, 2016

———————————

Before POSNER, RIPPLE, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. In 2014, Lend Lease construction
company, the construction manager of the River Point Tow-
er Project—a project to build an ultramodern office building
in downtown Chicago—hired Cives Corporation to be a
subcontractor on the project. Cives in turn hired Midwest
Steel, Inc., to be a sub-subcontractor. Midwest had, years be-
fore, hired Administrative Employer Services, Inc. (AES) to

supply Midwest with additional workers, who would be co-employed by Midwest and AES. These workers would work on the River Point Project.

In order to provide workers' compensation insurance to all the workers on the project, Lend Lease entered into what is called a "contractor controlled insurance program" with an insurance company named Starr Liability & Indemnity Co. The Starr policy provided for a $500,000 deductible; that is, Lend Lease would have to pay the first $500,000 of any claims, covered by the policy, of injured workers. All subcontractors were supposed to join in the policy; Lend Lease alleges that Midwest enrolled and therefore its workers were covered. Lend Lease also alleges that AES had several years earlier obtained workers' compensation for its workers from Technology Insurance Co. (referred to by the parties as "TIC"), which meant that injured AES-Midwest workers could obtain workers' compensation from either Starr (or Lend Lease if it hadn't used up its deductible) or TIC.

Later in 2014, four ironworkers, jointly employed by Midwest and AES and performing work for Midwest (and thus indirectly for Lend Lease, as the overall contract manger) were injured on the job and sought workers' compensation. Starr accepted coverage but under a reservation of rights, because of the $500,000 deductible. The workers' claims ultimately exceeded $500,000 (though by how much we haven't been told), so Lend Lease has had to pay its full deductible and Starr has paid the remaining claims.

But with Midwest and AES having acknowledged that they were the co-employers of the injured workers, Lend Lease filed a diversity suit against TIC, AES's insurer, and AES as well, seeking reimbursement of the $500,000 in

workers' compensation benefits that Lend Lease had paid to the four workers. The district court dismissed the suit, however, precipitating this appeal to us by Lend Lease.

Lend Lease alleges that the four injured workers were insured both by Starr and by TIC, and if this is right there would be an argument for splitting the workers' compensation benefits between the two insurers—and indeed we learned at oral argument that Starr has filed its own lawsuit against AES and TIC. See *Home Insurance Co. v. Cincinnati Insurance Co.*, 821 N.E.2d 269, 316 (Ill. 2004) ("Contribution as it pertains to insurance law is an equitable principle arising *among coinsurers* … and is only available where the concurrent policies insure the same entities, the same interests, and the same risks.") (emphasis added). But that's not this case; and in this case Lend Lease is not asking for a split between coinsurers—what good would that do it? Instead it argues that because it is a policyholder that paid a deductible in conformity to the Starr policy, it is entitled to contribution, or in the alternative to indemnification, from TIC, in the amount of $500,000, which would erase Lend Lease's deductible. Had it not been for the deductible, Starr would have had to pay the entire workers' compensation benefits due the injured employees, so it saved money—but so did Lend Lease, though probably less than the deductible. For the deductible, by reducing Starr's risk, doubtless had reduced the insurance premiums charged Lend Lease by Starr, by reducing Starr's potential liability to workers injured while employed on Lend Lease's construction project. Anyway, Lend Lease made a deal with Starr and is bound by it.

Lend Lease also asks for a declaratory judgment that TIC is obligated to pay the workers' compensation benefits for

the four injured workers, as well as the benefits for any future AES-Midwest workers who are injured on the project. Since we've rejected its claim for contribution or indemnification from TIC, there is no ground for the declaratory judgment that it seeks.

Lend Lease makes a separate and distinct argument that AES has been unjustly enriched because it "has paid less premium for its workers compensation insurance policy (i.e., the TIC Policy), it has not had to satisfy any applicable deductible or self-insured retention on the TIC Policy, and/or it has not had the claims of the Injured Workers counted against its insurance loss runs [reports that document claims activity]." But AES was not obligated to purchase an insurance policy that would get Lend Lease out of paying its deductible.

Last, Lend Lease appeals the denial of its motion under Federal Rule of Civil Procedure 59(e) asking the district judge to change judgment from dismissal with prejudice to dismissal without prejudice in order to allow Lend Lease to file a fourth complaint that would add Starr as a plaintiff and Midwest as a defendant, and assert new claims against AES. But Lend Lease has already had three chances to plead correctly—making this a case of three strikes and you're out—and Starr can litigate its own claims against TIC.

The judgment of the district court is

AFFIRMED.